**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**COLD SMOKE CAPITAL, LLC,**

        **Plaintiff,**

    **v.**

**DEAN P. GROSS et al.,**

        **Defendants.**

**1:11-cv-3558-WSD**

## OPINION AND ORDER

This matter is before the Court on Defendants Christopher J. Innes and

Wohlford Partners, LLC's Motion to Dismiss for Lack of Personal Jurisdiction [5]

("Motion to Dismiss"). Also before the Court is Plaintiff Cold Smoke Capital,

LLC's Motion for Leave to Conduct Jurisdictional Discovery Against Defendants

Christopher J. Innes and Wohlford Partners, LLC and to Stay Their Motions to

Dismiss [6] ("Motion for Jurisdictional Discovery").

**I.     BACKGROUND**

    A.     <u>Procedural History</u>

On October 18, 2011, Plaintiff Cold Smoke Capital, LLC ("Cold Smoke")

filed its Complaint [1] against Defendants Dean P. Gross ("Gross"), Gregory W.

Laser ("Laser"), Chris Innes[1] ("Innes"), Wohlford Partners, LLC ("Wohlford"), and ten (10) "Doe" Defendants.  The Complaint asserts four "causes of action" against Innes and Wohlford (collectively the "New Jersey Defendants"): "money had and received" (Count VI); fraudulent transfer under section 18-2-74 of the Georgia Code (Count VII); fraudulent transfer under section 18-2-75 of the Georgia Code (Count VIII); and punitive damages under section 51-12-5.1 of the Georgia Code (Count IX).

On December 5, 2012, the New Jersey Defendants filed their Motion to Dismiss, seeking dismissal of Innes and Wohlford, under Rule 12(b)(2) of the Federal Rules of Civil Procedure, on the ground that the Court lacks personal jurisdiction over these two Defendants.  The Motion also seeks dismissal of Wohlford on the basis that service of process on it was defective.

On December 16, 2011, Cold Smoke filed its Motion for Jurisdictional Discovery, seeking a stay of the Court's ruling on the Motion to Dismiss and requesting leave to conduct discovery into the jurisdictional issues raised in the Motion to Dismiss.  On January 5, 2012, Cold Smoke filed its opposition to the

---

[1] Although the Complaint names "Chris Innes" as a defendant, Mr. Innes appeared, through the Motion to Dismiss, as "Christopher J. Innes."

Motion to Dismiss [16], along with a declaration of its COO and General Counsel James Gooch [16-1].

B.    Relevant Allegations in Complaint

Cold Smoke is an Atlanta-based private investment company managed by Dan Brooks ("Brooks") and James Gooch ("Gooch").  (Compl. [1] ¶¶ 11–12.)  On July 23, 2009, Brooks and Gooch traveled from Georgia to California to meet Gross, for the first time, in connection with a potential investment opportunity.  (Id. ¶¶ 13–14.)  Gross stated previously that he had worked in the syndicated radio business and that he had knowledge of advertising practices and relationships with advertising brokers.  (Id. ¶ 16.)  At the meeting, Gross explained that he did business under the name Bridon Entertainment, and he explained the "opportunity" he offered to Cold Smoke.  (Id. ¶ 15.)  Gross told Brooks and Gooch that he had the ability to purchase, from unnamed contacts, radio and billboard advertising space at significant discounts and then to re-sell the space to national advertising firms at significant mark-ups.  (Id. ¶ 16.)  Gross told Brooks and Gooch that, if Cold Smoke invested in the "opportunity," Cold Smoke could expect a profit of 36%, within 90 to 120 days.  (Id. ¶ 23.)  Gross told Brooks and Gooch that "the proposed investment was a short-term opportunity that required immediate funding."  (Id. ¶ 26.)

Brooks and Gooch agreed to participate.  (Id. ¶ 33.)  On July 29, 2009, Cold Smoke gave Gross $7.5 million "to assist [Gross] in funding ongoing advertising opportunities."  (Id. ¶¶ 35, 37 & Ex. A.)  Under a written agreement with Cold Smoke, if Gross received payment for the re-sale of the advertising space, Gross promised to pay a 36% "royalty" on the investment by a certain date, or to refund Cold Smoke's investment if the re-sale was not made.  (Id. ¶¶ 35–36 & Ex. A.)

Cold Smoke tendered $7.5 million to Gross.  (See id. ¶ 37.)  Upon "information and belief," Cold Smoke claims that Gross did not use Cold Smoke's money to fund any "advertising opportunities."  (Id. ¶ 38.)  It claims that Gross did not refund Cold Smoke's investment or pay Cold Smoke a royalty.  (Id. ¶ 64.)

Cold Smoke claims that on August 4, 2009, Gross drafted a check on his bank account in the amount of $6,926,500, with the check made payable to Gross. (Id. ¶ 43.)  Cold Smoke claims that Gross endorsed the check to "Chris Innes/Wohlford Partners, LLC" and that Innes deposited the check into his bank account on August 5, 2009.  (Id. ¶ 48.)  Upon further "information and belief," Cold Smoke claims that prior to receiving the check, Innes was aware that Cold Smoke was located in Atlanta, was aware that Cold Smoke was the source of the check's funds, and "may have attempted to contact" Gooch in Atlanta.  (Id. ¶¶ 45–47.)

In 2009, Innes, a New Jersey resident, was the managing member of Wohlford, a New Jersey limited liability company. (Id. ¶ 40.) Upon Cold Smoke's "information and belief," in 2009, Innes had engaged in "business transactions" with Defendant Laser,[2] and both Innes and Wohlford had been investors with Gross. (Id. ¶¶ 39–40, 42.) Upon Cold Smoke's "information and belief," in June and July 2009, Innes "regularly communicated" with Gross and Laser and "demanded payment from them." (Id. ¶ 41.) In an interview with Securities and Exchange Commission ("SEC") staff, Innes confirmed that he was an investor with Gross and that he had been expecting a "principal and interest payment" from Gross when he received Gross's check. (Id. ¶ 54–55.) He also stated in the interview that the check was for more than he was due from Gross and that he had agreed to cash the check and return the surplus amount to Gross. (Id. ¶ 56.)

---

[2] Laser's involvement in the conduct alleged is circumspect at best. Cold Smoke alleges that Laser resides in California (Compl. ¶ 4), that Innes "regularly communicated" with him about unspecified transactions of some kind (id. ¶¶ 41–42), and that Cold Smoke has not had any direct communication with Laser but that Laser was an active participant in Gross's fraudulent scheme and, in some unspecific way, aided Gross in defrauding Cold Smoke (id. ¶ 77).

C.     Additional Factual Allegations Contained in Declarations

1.     *Innes's Declarations*

Innes submitted his declarations in support of his Motion to Dismiss. In them, Innes states that he has been a resident of New Jersey since 1999, and that he has never lived in Georgia. He further states that, prior to its dissolution in 2009, Wohlford was a New Jersey limited liability company and that Innes was the trustee of a trust that was the managing member of Wohlford.

In 2008, Wohlford began investing with Gross, a resident of California. By August 2009, Gross owed Wohlford money under various contracts. On August 4, 2009, Gross sent to Wohlford in New Jersey a check in the amount of $6,926,500 drafted on Gross's bank account in California. The check was sent with the intention that Wohlford deduct from the check proceeds the amount due to Wohlford and return the difference to Gross. Gross also sent Innes a "to whom it may concern" letter from Cold Smoke stating that Cold Smoke had wired $7.5 million to Gross "to fund media services." This was the first that Innes had heard of Cold Smoke. On August 5, 2009, Innes tried to call Gooch, who was identified in Cold Smoke's letter. He left Gooch a voicemail. Gooch never returned the call. Also on August 5, 2009, Wohlford deposited Gross's check, retained $3,718,687 to

satisfy Gross's debt to it, and returned the balance to Gross in California by wire transfer.

### 2. *Gooch's Declaration*

Gooch submitted his declaration in opposition to the Motion to Dismiss. In it, Gooch states that he is the Chief Operating Officer and General Counsel of Cold Smoke. He further states that, on July 29, 2009, Cold Smoke paid $7.5 million to Gross "to fund advertising opportunities," as described in a written agreement. Gross did not use the funds for the contractual purpose but instead transferred most of the funds—$6,926,500—to Innes and Wohlford.

On September 26, 2011, the FBI interviewed Gooch in connection with an investigation of Gross. During the interview, Gross was shown a transcript of an interview of Innes by the SEC. According to the transcript, Innes was aware that Cold Smoke was the source of the funds he received from Gross and that Cold Smoke was based in Georgia; Innes claimed to have attempted to contact Gooch, by voicemail, to discuss the funds; and Innes was suspicious of the funds and sought advice from his attorney before accepting them.

## II.  MOTION TO DISMISS

### A.  Legal Standard

To survive a motion to dismiss under Rule 12(b)(2), a plaintiff must allege sufficient facts in its complaint to make out a *prima facie* case of personal jurisdiction over a defendant.  Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257–58 (11th Cir. 2010) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009)).  If the plaintiff meets its initial burden, the defendant may challenge the allegations of jurisdiction with evidence. See id.  Upon the defendant's submission of jurisdictional evidence, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction."  Id. (quoting United Techs., 556 F.3d at 1274); accord Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002).  Where there are conflicts between the parties' evidence, the court makes all reasonable inferences in favor of the plaintiff.  Diamond Crystal, 593 F.3d at 1257 (quoting Meier, 288 F.3d at 1269); Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988).

### B.  Analysis

A district court has personal jurisdiction over a non-resident defendant if the exercise of jurisdiction (1) is permitted under the state long-arm statute and (2) does not violate the Due Process Clause of the Fourteenth Amendment.

Diamond Crystal, 593 F.3d at 1257–58.  In Georgia, the two inquiries are distinct

because the Georgia long-arm statute imposes obligations that a plaintiff must

establish that are independent of procedural due process requirements.  Id. at 1259.

To satisfy the Georgia long-arm statute, the plaintiff must establish that jurisdiction

is permitted under an express statutory provision, interpreted and applied literally.

Id. at 1259 & n.10 (construing Innovative Clinical Consulting Servs., LLC v. First

Nat'l Bank of Ames, 620 S.E.2d 352 (Ga. 2005)).  To satisfy the constitutional

requirement, the defendant must have "fair warning" of litigation in Georgia by

establishing "minimum contacts" with the state.  Id. at 1267.  If such "minimum

contacts" are shown, the defendant can escape the exercise of personal jurisdiction

over it only by making "a 'compelling case' that the exercise of jurisdiction would

violate traditional notions of fair play and substantial justice."  Id. (citing Burger

King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

> 1.    *Personal Jurisdiction under the Georgia Long-Arm Statute*

Georgia's long-arm statute confers personal jurisdiction over non-resident

defendants in cases arising out of six enumerated circumstances.  See O.C.G.A.

§ 9-10-91 (Supp. 2012).  In this case, Cold Smoke asserts that the New Jersey

Defendants are subject to jurisdiction under three of the statutory circumstances,

specifically, those actions "arising from any acts [or] omissions" in which the defendant:

> (1) Transacts any business within this state;

> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; [or]

> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state . . . .

See id. Cold Smoke asserts that the New Jersey Defendants are subject to jurisdiction under these statutory provisions based on their individual actions and because of a "conspiracy" between them and Gross, who is subject to jurisdiction under these provisions.

### a. "Transacts any business within this state"

Jurisdiction may be exercised under subsection (1) of the long-arm statute over a defendant who "[t]ransacts any business within" Georgia. O.C.G.A. § 90-10-91(1). This means that the defendant must have "purposefully done some act or consummated some transaction" in Georgia. Diamond Crystal, 593 F.3d at 1260 (quoting Aero Toy Store, LLC v. Grieves, 631 S.E.2d 734, 736–37 9 (Ga. Ct. App. 2006)). The defendant's physical presence in the state to perform the act is not

required.  Id. at 1264.  A defendant's "intangible" acts, such as mail and telephone calls, must be considered.  Id.  The defendant, however, must "fairly be said" to have literally "transacted" business in Georgia.  Id.; see also id. at 1264 n.18 ("'Transact' means 'to prosecute negotiations,' to 'carry on business,' 'to carry out,' or 'to carry on.' (quoting Webster's Third New International Dictionary 2425 (1993)).  That is, the defendant must have engaged in conduct directed to Georgia and which occurs in Georgia.  See id.

The Complaint in this case alleges that the New Jersey Defendants knew that Gross had obtained the disputed funds from a Georgia-based company and that Innes "may have attempted to contact" Gooch, in Georgia, before the New Jersey Defendants received the check from Gross.  The Complaint does not contain allegations that the New Jersey Defendants were involved in Gross's communications with Cold Smoke or its representatives, and it does not allege that the New Jersey Defendants were involved in Gross's efforts to obtain the funds represented in the check forwarded to the New Jersey Defendants by Gross.  The Complaint shows, at most, that the New Jersey Defendants had knowledge of that transaction.

These allegations do not establish a *prima facie* case of jurisdiction under subsection (1) of the long-arm statute.  That a defendant *knows* of a business

transaction does not establish that the defendant itself *transacted business*, or carried out business or prosecuted negotiations. See id. That a defendant "may have attempted to contact" a Georgia resident, without success, does not establish that the defendant actually transacted any business. See id.; see also Dixie HomeCrafters, Inc. v. HomeCrafters of Am., LLC, No. 1:08-CV-649-JOF, 2009 WL 596009, at *8 (N.D. Ga. Mar. 5, 2009) (holding that sporadic, unilateral phone calls by an employee to an employer did not constitute "transacting business" within subsection (1) of the long-arm statute).[3] The Court does not have jurisdiction over the New Jersey Defendants under subsection (1) of the long-arm statute.

      b.      "Commits a tortious act or omission within this state"

For jurisdiction to be asserted under subsection (2) of the long-arm statute, the defendant must "commit[] a tortious act or omission within" Georgia. O.C.G.A. § 9-10-91(2). A tortious act or omission occurs "either where the

---

[3] The Court concludes that the Complaint does not make a *prima facie* showing of jurisdiction under subsection (1) and, therefore, does not consider extrinsic evidence. Even if the Court did, the declarations of Innes establish that the "attempted communication" consisted of a single voicemail message left for Gooch *after* Cold Smoke had given its money to Gross. Cold Smoke does not dispute this assertion. Thus, even if the message could be considered a business transaction, the causes of action asserted against the New Jersey Defendants did not *arise out of* the voicemail message. See O.C.G.A. § 9-10-91 (conferring long-arm jurisdiction "as to a cause of action arising from" the enumerated acts).

allegedly negligent act or omission was made . . . or where the damage was sustained . . . ." Gee v. Reingold, 578 S.E.2d 575, 579 (Ga. Ct. App. 2003) (omissions in original) (quoting Atlanta Propeller Serv., Inc. v. Hoffmann GMBH & Co., 382 S.E.2d 109, 111 (Ga. Ct. App. 1989)). The "damage" from a tortious act is not "sustained in Georgia simply because the plaintiff . . . is a resident of Georgia. . . . A tort occurs when and where the actual injury or accident takes place, and not at the place of the economic consequences of that injury." Id. (quoting Atlanta Propeller, 382 S.E.2d at 111) (omissions in original); accord Exceptional Mktg. Grp. v. Jones, 749 F. Supp. 2d 1352, 1363 (N.D. Ga. 2010).

The Complaint here alleges that the New Jersey Defendants received a "fraudulent transfer," under the Uniform Fraudulent Transfer Act, and that the funds were sent from California to New Jersey. Under the Uniform Fraudulent Transfer Act, enacted in Georgia and several other states, a "transfer" occurs when a debtor transmits money to a transferee, without regard to third-party creditors of the debtor. See O.C.G.A. §§ 18-2-71(12), 18-2-76(3) (2010); see also Unif. Fraudulent Transfer Act §§ 1(12), 6(3), 7A U.L.A. 13, 150 (2006). The Complaint, therefore, does not allege that any part of the "fraudulent transfer" occurred in Georgia or that the New Jersey Defendants committed a tortious act or omission in Georgia. See Nordberg v. Granfinanciera, S.A. (In re Chase &

Sanborn Corp.), 835 F.2d 1341, 1346 (11th Cir. 1988) (holding that a fraudulent transfer, under bankruptcy law, occurred where the transferred funds were sent to and from), rev'd on other grounds, 492 U.S. 33 (1989); see also Mullins v. TestAmerica, Inc., 564 F.3d 386, 400–01 (5th Cir. 2009) (stating that a defendant's receipt of a fraudulent transfer, under Texas's analogous provision of the Uniform Fraudulent Transfer Act, does not "*ipso facto* establish[] personal jurisdiction in the state where a complaining creditor resides"). Cold Smoke's alleged damages, therefore, were sustained outside of Georgia. See Gee, 578 S.E.2d at 579. Accordingly, subsection (2) of the long-arm statute does not confer jurisdiction over the New Jersey Defendants.

c.      "Commits a tortious injury in this state"

Subsection (3) of the long-arm statute applies only if a defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." O.C.G.A. § 9-10-91(3); Innovative, 620 S.E.2d at 354. The Complaint in this case does not contain any allegation that the New Jersey Defendants engaged in any business activity in Georgia. The only connection alleged between the New Jersey Defendants and Georgia is that the Defendants received funds from California that originated in Georgia. This allegation does not show "regular" or

"persistent" conduct in Georgia and does not show revenue derived from "goods used or consumed or services rendered" in Georgia. See O.C.G.A. § 9-10-91(3); see also Innovative, 620 S.E.2d at 354 (holding that subsection (3) must be read and applied literally).[4] Accordingly, subsection (3) of the long-arm statute does not confer jurisdiction over the New Jersey Defendants.

### d.  Conspiracy Jurisdiction

Georgia law recognizes "conspiracy jurisdiction," a doctrine under which jurisdiction is conferred over a non-resident defendant not by its own actions, but by the actions of a co-conspirator. See Hyperdynamics Corp. v. Southridge Capital Mgmt., LLC, 699 S.E.2d 456, 466 (Ga. Ct. App. 2010); Rudo v. Stubbs, 472 S.E.2d 515, 516–17 (Ga. Ct. App. 1996). For conspiracy jurisdiction to obtain, a plaintiff does not have to assert an underlying claim for "conspiracy" but must allege facts sufficient to show a conspiracy between the non-resident defendant and a co-conspirator over whom the court has independent jurisdiction. See Rudo, 472 S.E.2d at 517; see also Dixie, 2009 WL 596009, at *7; Adventure Outdoors, Inc. v. Bloomberg, 519 F. Supp. 2d 1258, 1272 & n.5 (N.D. Ga. 2007), rev'd on other

---

[4] The Court concludes that the Complaint does not make a *prima facie* showing of jurisdiction under subsection (3) and, therefore, does not consider extrinsic evidence. Again, if it did, the declarations of Innes establish that neither Innes nor Wohlford has transacted or conducted any business activity in Georgia. Cold Smoke does not offer any evidence to rebut this assertion.

grounds, 552 F.3d 1290 (11th Cir. 2008). A conspiracy exists where two or more

persons "come to a mutual understanding that they will accomplish [an] unlawful

design." Hyperdynamics, 699 S.E.2d at 466 (quoting Nottingham v. Wrigley, 144

S.E.2d 749, 751 (1965)). The alleged conspiracy is sufficient to confer jurisdiction

"[w]hen the purpose of [the] conspiracy is to commit an intentional tort against" a

Georgia resident. Rudo, 472 S.E.2d at 517; see also Sky Shots Aerial

Photography, Inc. v. Franks, 551 S.E.2d 805, 808 (Ga. Ct. App. 2001). If the non-

resident defendant refutes the conspiracy allegations, the plaintiff must produce

evidence to establish it. See Rudo, 472 S.E.2d at 517–18 & n.6.

Cold Smoke's Complaint alleges that the New Jersey Defendants knew that

Cold Smoke had furnished the disputed funds to Gross for the purpose of financing

an investment and that, despite this knowledge, the New Jersey Defendants

received and accepted the disputed funds from Gross.[5] The Complaint does not

allege that the New Jersey Defendants and Gross had a "mutual understanding" to

accomplish any goal, let alone an understanding to defraud Cold Smoke. See

Hyperdynamics, 699 S.E.2d at 466. Cold Smoke, therefore, does not allege in its

---

[5] In its brief, Cold Smoke claims that "[t]here is no dispute here that Mr. Gross is a
defendant over whom the courts can exercise personal jurisdiction." (Pl.'s Br.
Opp'n [16] at 12.) The New Jersey Defendants do not dispute this claim in their
briefs. Accordingly, for purposes of the Motion to Dismiss, the Court assumes that
it has personal jurisdiction over Gross.

Complaint a conspiracy between Gross and the New Jersey Defendants,[6] and the Court cannot exercise jurisdiction over them on that basis.  See <u>Sky Shots</u>, 551 S.E.2d at 808 (holding that conspiracy jurisdiction did not obtain because "[t]here is no evidence in this case that [the non-resident defendant] targeted a Georgian in a conspiracy to defraud); <u>Dixie</u>, 2009 WL 56009, at *7 (finding "conspiracy jurisdiction" because the complaint specifically alleged that the non-resident defendants worked directly with the resident defendants to target the plaintiff); <u>Adventure Outdoors</u>, 519 F. Supp. 2d at 1272 (finding "conspiracy jurisdiction" because the non-resident defendants directed the resident defendants to engage in tortious conduct against the plaintiffs); <u>see also</u> <u>United Techs. Corp. v. Mazer</u>, 556 F.3d 1260, 1281–82 (11th Cir. 2009) (refusing to find "conspiracy jurisdiction" under Florida law because the plaintiff did not explicitly allege an agreement between the resident and non-resident defendants).

      2.    *Whether the Exercise of Jurisdiction Would Violate Due Process*

The Court concludes that it lacks personal jurisdiction over the New Jersey Defendants under the Georgia long-arm statute, and an inquiry into the constitutionality of exercising jurisdiction is unnecessary.  See, e.g., <u>Wells Fargo</u>

---

[6] The conspiracy count (Third Cause of Action) in the Complaint alleges only a conspiracy between Gross and Laser, not any of the New Jersey Defendants.

Bank v. Berkman, No. 1:10-CV-2286-TWT, 2011 WL 709483, at *5 (N.D. Ga. Feb. 17, 2011) ("Having found that [defendant] is not subject to personal jurisdiction under the Georgia long-arm statute, it is unnecessary to determine whether personal jurisdiction would comport with federal due process."). If, however, the Court did conclude that the requirements of the Georgia long-arm statute had been met—which the Court does not—and a constitutionality review was conducted, the Court would find that the exercise of jurisdiction over the New Jersey Defendants would violate Due Process because the New Jersey Defendants lack sufficient—indeed lack any—"minimum contacts" with Georgia. See Diamond Crystal, 593 F.3d at 1267 ("[S]tates may exercise jurisdiction over only those who have established 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (quoting Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 (1984)) (second alteration in original)).

A non-resident defendant has sufficient "minimum contacts" if it "purposefully" directs its activities toward forum residents and the litigation arises from those activities. Id. (quoting Burger King, 471 U.S. at 472–73). "Random, fortuitous, or attenuated contacts" are not sufficient, nor are "the unilateral activit[ies] of a third person." Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253,

258 (11th Cir. 1996) (citing <u>Burger King</u>, 471 U.S. at 475; <u>Helicopteros</u>, 466 U.S. at 417).

In this case, Cold Smoke's Complaint alleges that the New Jersey Defendants received a fraudulent transfer from Gross with knowledge of the source of the funds. Neither the receipt of the funds from California nor the knowledge of the source of the funds demonstrates "purposeful" activity directed toward Cold Smoke specifically or Georgia generally. <u>See</u> <u>Robinson</u>, 74 F.3d at 258; <u>see also, e.g.</u>, <u>Marble Point Energy, Ltd v. Crusader Fin. Servs., Inc.</u>, No. 4:06CV1656 HEA, 2009 WL 1940383, at*3 (E.D. Mo. July 7, 2009) ("The receipt of funds from a [resident] bank clearly falls within the 'random,' 'fortuitous' and 'attenuated' category and is expressly outside the reach of the exercise of personal jurisdiction under a due process, minimum contacts analysis."); <u>Children's Orchard, Inc. v. Children's Orchard Store No. 142, Inc.</u>, No. 2010 WL 2232440, at *8 (E.D. Mich. May 28, 2010) (holding that an alleged fraudulent transferee's knowledge of the creditor's location was insufficient to show "purposeful" alignment with the creditor's state).

Having concluded that Georgia's long-arm statute does not confer jurisdiction over the New Jersey Defendants,[7] and that the Due Process Clause of the Fourteenth Amendment prohibits the exercise of such jurisdiction, the Court finds that the New Jersey Defendants must be dismissed.[8]

## III.  MOTION FOR JURISDICTIONAL DISCOVERY

A plaintiff has a qualified right to conduct jurisdictional discovery when jurisdictional facts are in dispute.  Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 729–30 & n.7 (11th Cir. 1982) (holding that "jurisdictional discovery is not entirely discretionary" because "a court does not have discretion to grant or deny a

---

[7] Cold Smoke also has asserted claims against ten (10) "Doe" Defendants.  The Complaint does not describe the Doe Defendants, other than to state that that they are individuals who, "upon information and belief, received fraudulently transferred payments from" the other Defendants.  (Compl. ¶ 8.)  The Complaint does not assert any claims against the Doe Defendants.  "As a general matter, fictitious-party pleading is not permitted in federal court."  Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010).  While courts have made exceptions when the plaintiff specifically describes an individual without stating his or her name precisely or correctly, Cold Smoke has not provided any description of the Doe Defendants in this case.  See id. ("We have created a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" (quoting Dean v. Barber, 951 F.2d 1210, 1215–16 (11th Cir. 1992)).  Thus, the ten (10) Doe Defendants are required to be dismissed.

[8] Because the Court concludes that it lacks personal jurisdiction over the New Jersey Defendants, and dismisses Innes and Wohlford on that basis, the Court does not reach the alternative argument that Wohlford should be dismissed for insufficient service of process.

request for jurisdictional discovery [when jurisdictional facts are in dispute]."
(citing C. Wright & A. Miller, Federal Practice and Procedure § 2009 (n.d.), and
quoting Note, The Use of Discovery to Obtain Jurisdictional Facts, 59 Va. L. Rev.
533, 546–47 (1973) (alteration in original)).  "Nonetheless, a district court may
properly refuse or limit jurisdictional discovery if the plaintiff has not made a
sufficient showing that there may be a basis for exercise of jurisdiction, or if the
proposed discovery seems unlikely to shed light on the jurisdictional question."
Charles Alan Wright et al., Federal Practice and Procedure § 2008.3, at 184 (2010).

　　　　The Court has concluded that Cold Smoke's Complaint does not make a
*prima facie* showing of personal jurisdiction over the New Jersey Defendants.
Jurisdictional facts are not in dispute, and Cold Smoke does not have a right to
jurisdictional discovery.  See Butler v. Sukhoi Co., 579 F.3d 1307, 1314 (11th Cir.
2009) (holding that "the district court abused its discretion in . . . granting
discovery on the jurisdictional issue" because "the complaint was insufficient as a
matter of law to establish a *prima facie* case that the district court had
jurisdiction"); McElmurray v. Consol. Gov't, 501 F.3d 1244, 1251 (11th Cir. 2007)
(affirming a refusal to grant jurisdictional discovery where lack of jurisdiction had
been decided on the pleadings); see also Cent. States, Se. & Sw. Areas Pension
Fund v. Reimer Express World Corp., 230 F.3d 934, 946 (7th Cir. 2000) ("At a

minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted."); <u>Jazini v. Nissan Motor Co.</u>, 148 F.3d 181, 186 (2d Cir. 1998) ("Since the [plaintiff] did not establish a prima facie case that the district court had jurisdiction over [the defendant], the district court did not err in denying discovery on that issue.").[9] Accordingly, the Court denies Cold Smoke's Motion for Jurisdictional Discovery.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants Christopher J. Innes and Wohlford Partners, LLC's Motion to Dismiss for Lack of Personal Jurisdiction [5]

---

[9] In cases where there is a genuine dispute over a jurisdictional fact, courts generally require the plaintiff to explain what facts it hopes to develop through discovery. <u>See, e.g.</u>, <u>Web.com, Inc. v. Go Daddy Group, Inc.</u>, No. 1:06-cv-1461-TCB, 2007 WL 7035105, *5 n. 2 (N.D. Ga. Aug. 3, 2007). In its briefs, Cold Smoke offers a single "example" of what it hopes to obtain in discovery: records from an SEC investigation that may establish that the New Jersey Defendants had knowledge of the source of the disputed funds. (Pl.'s Reply Brief [17] at 5.) As discussed above, however, the Defendants' "knowledge" does not establish the requisite actions *in* or *directed toward* Georgia. <u>See</u> <u>Diamond Crystal</u>, 593 F.3d at 1259 (explaining that Georgia's long-arm statute "*requires that an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction*." (quoting <u>Innovative</u>, 620 S.E.2d at 353)); <u>id.</u> at 1267 (explaining that, for jurisdiction to satisfy due process, the defendant must have "purposefully directed his activities at residents of the forum" (quoting <u>Burger King</u>, 471 U.S. at 472–73)). Accordingly, Cold Smoke's proposed discovery would not lead to *jurisdictional* facts.

is **GRANTED**.  Plaintiff Cold Smoke Capital, LLC's claims against Christopher J. Innes and Wohlford Partners, LLC are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff Cold Smoke Capital, LLC's Motion for Leave to Conduct Jurisdictional Discovery Against Defendants Christopher J. Innes and Wohlford Partners, LLC and to Stay Their Motions to Dismiss [6] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Cold Smoke Capital, LLC's claims against Defendants "Does 1–10" are **DISMISSED**.

**SO ORDERED** this 21st day of August 2012.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE